Christine S. Haskett (Bar. No. 188053)
chaskett@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Heather W. Habes (Bar No. 281452)
hhabes@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

Attorneys for Plaintiff
ECOLAB INC.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLAB INC., <br><br> Plaintiff, <br><br> v. <br><br> ACE PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Defendant | Civil Case No.: 2:23-cv-00190 <br><br> **COMPLAINT FOR DECLARATORY RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Ecolab Inc. ("Ecolab") alleges for its Complaint against Defendant ACE Property Casualty and Insurance Company ("ACE"), as follows.

**PRELIMINARY STATEMENT AND NATURE OF ACTION**

1. This is a civil action for declaratory relief arising out of ACE's insistence that it has no obligation to pay for defense and indemnity in connection with lawsuits involving alleged bodily injury arising from the purported use of Ecolab's OxyCide product, including the lawsuit filed by Jennifer Slamer and Christopher Slamer, Case No. CIVDS1709131, pending in the Superior Court of the State of California for the County of San Bernardino (the "Slamer Lawsuit"), until all triggered primary policies are exhausted. ACE sold umbrella insurance policies to Ecolab, including: ACE Umbrella Plus Commercial Umbrella Liability Policy No. G27423930 (policy period December 31, 2014 to December 31, 2015) and Policy No. G27930426 001 (policy period December 31, 2015 to December 31, 2016) (collectively, the "Policies").

**PARTIES**

2. Plaintiff Ecolab is a corporation that provides water, hygiene, and infection prevention solutions and services and that is organized under the laws of the State of Delaware, with its principal place of business in St. Paul, Minnesota.

3. Defendant ACE is a corporation that is organized under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. ACE is subject to personal jurisdiction within the Central District of California by virtue of its extensive business operations in California and in this District and issuing policies that cover risks located within the State, including the insurance policy that it issued to Ecolab that is the subject of this action.

6. This action arises out of ACE's contacts with the State of California, including but not limited to having availed itself of the California market by selling the

insurance policies at issue in this action to cover alleged bodily injuries that occur to persons located in California and this District, and this Court may exercise personal jurisdiction over ACE.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) for at least the following reasons: a substantial part of the events or omissions giving rise to Ecolab's claim ACE's responses to it occurred in this District, and the Policies insure Ecolab for alleged bodily injury that occurs to persons located in this District.

## FACTUAL ALLEGATIONS

**A.   Ecolab Purchased Insurance To Protect Itself Against Liability Claims**

8. To protect itself against claims for liability by third parties, Ecolab purchased the Policies, for which ACE collected substantial premiums.

9. Section I.A of the Insuring Agreement in the Policies states that ACE "will pay on behalf of the 'insured' those sums in excess of the 'retained limit' that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies." The Policies apply to "bodily injury" that is caused by an "occurrence" and occurs during the "policy period."

10. The Policies, as modified by the Retained Limit Amendatory Endorsement – No Underlying Insurance (the "Retained Limit Endorsement"), define "retained limit" to mean "the total applicable self-insured limits listed in the Schedule of Retained Limits below." The Retained Limit Endorsement includes a table that states, in relevant part, that for "Products/Completed Operations" the "Retained Limit" is $5,000,000 for "Each Occurrence" and $15,000,000 in the "Aggregate."

11. The Policies define "products-completed operations hazard" to mean, in relevant part, "all 'bodily injury' . . . occurring away from premises you own or rent and arising out of 'your product'[.]"

12. The Policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" and "includes mental anguish or mental injury resulting from bodily injury."

13. The Policies define "occurrence," with respect to "bodily injury," to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same 'occurrence', regardless of the frequency or repetition thereof, or the number of claimants."

**B.    The Slamer Lawsuit**

14. As alleged in the Slamer Lawsuit, Plaintiff Jennifer Slamer was employed as a registered nurse at Kaiser Permanente, a hospital in Fontana, California. She alleges that OxyCide, a product manufactured by Ecolab, was first introduced at Kaiser Permanente for disinfecting various surfaces at the hospital beginning in June 2015, and thereafter she allegedly experienced various physical symptoms whenever the product was used, culminating with a purported incident in February 15, 2016 that allegedly resulted in corresponding injuries that required her to be hospitalized (the "Incident").

**C.    ACE Insists On Exhaustion Of All Triggered Primary Policies**

15. By letter dated December 1, 2022, ACE acknowledged that each of the Policies "generally provides that coverage, if any, is afforded for those sums in excess of the 'retained limit' that the 'insured' becomes obligated to pay as damages because of 'bodily injury' to which the policy applies, but only if the 'bodily injury' occurs during the 'policy period' and is caused by an 'occurrence'." ACE did not dispute that Plaintiff Slamer alleges "bodily injury" or that her injuries occurred during the "policy period" or that they were caused by an "occurrence."

16. But ACE argued that it had no obligation to provide coverage until Ecolab demonstrated that the "retained limit" had been satisfied, and the "retained limit" in

ACE's view meant the limits of all primary policies in effect during the time that Plaintiff Slamer allegedly sustained injuries:

> Accordingly, at a minimum the 2014-15 and 2015-16 National Union Policies respond to the Slamer Lawsuit and must be appropriately exhausted before the corresponding [ACE] policies respond (if at all). Moreover, to the extent Plaintiff Slamer alleges injuries resulting from OxyCide exposure beyond the December 31, 2014 to December 31, 2016 policy periods, all underlying coverage must similarly be exhausted before any excess coverage afforded under the [ACE] policies would respond.

17. By email dated December 20, 2022, Ecolab asked ACE to explain its position that under the applicable law, "at a minimum the 2014-15 and 2015-16 National Union Policies . . . must be appropriately exhausted before the corresponding [ACE] policies respond (if at all)."

18. On January 3, 2023, ACE responded to Ecolab's December 20 email, reiterating its position and stating that "[C]overage (if any) under the [Chubb] excess policies would only be excess of the corresponding underlying policies, e.g., the 2014-15 and 2015-16 National Union Policies, as applicable."

19. Ecolab has paid the required premiums in full and has satisfied all other conditions to coverage for the Slamer Lawsuit, or is otherwise excused from doing so. All actions taken by Ecolab with respect to the Slamer Lawsuit have been reasonable, and no action has prejudiced the ability of ACE to fulfill its contractual obligations. The Policies have been in full force and effect at all pertinent times.

20. The total amount of losses coming within the scope of coverage of one or more of the Policies that has been incurred and paid by Ecolab in connection with the Slamer Lawsuit, and that will be incurred or paid in the future, is not yet known or knowable, but is expected to be substantial relative to the collective limits of the Policies, and will reach, or could potentially reach, the Policies' respective attachment points, depending on multiple factors not yet known. ACE is responsible to pay all amounts that

have been, or will in the future be, incurred or paid by Ecolab in connection with the Slamer Lawsuit that are covered under the terms of the Policies it issued.

## FIRST CLAIM FOR RELIEF

FOR DECLARATORY RELIEF RE: RIGHT TO SELECT POLICIES

21. Ecolab repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

22. Ecolab seeks a declaration of the parties' rights and duties under the Policies in accordance with Section 1060 of the Code of Civil Procedure.

23. An actual controversy of a justiciable nature presently exists between Ecolab and ACE with respect to the retained limit that must be exhausted before ACE has a duty to pay under the Policies.

24. Ecolab contends subject to applicable terms of the Policies, Ecolab may choose which of the Policies or policy year(s) will be required to pay up to its or their applicable policy limits for the Slamer Lawsuit, so long as there is loss covered by the Policies in effect during that policy period. *See Montrose Chem. Corp. v. Super. Ct.,* 9 Cal. 5th 215, 237 (2020); *see also SantaFe Braun, Inc. v. Ins. Co. of N. Am.*, 52 Cal. App. 5th 19, 25 (2020). If and when coverage under the Policies or in that policy year is exhausted, Ecolab may select additional policies or policy years to provide coverage, until Ecolab is made whole for its losses.

25. On the other hand, ACE appears to contend that Ecolab does not have a right to select among the triggered policy years, and instead Ecolab must demonstrate exhaustion of all triggered primary policies before the Policies have any obligation to respond to the Slamer Lawsuit.

26. The controversy between Ecolab and ACE is ripe for judicial review.

27. The controversy is of sufficient immediacy to justify the issuance of a declaratory relief.

28. Ecolab accordingly seeks a declaration from the Court that:

a. Ecolab may choose which of the Policies or policy year(s) will be required to pay up to its or their applicable policy limits for the Slamer Lawsuit, so long as there is loss covered by the Policies in effect during that policy period; and

b. When coverage under the Policies, or in that policy year, is exhausted, Ecolab may select additional policies or policy years to provide coverage, until Ecolab is made whole for its losses.

## SECOND CLAIM FOR RELIEF

FOR DECLARATORY RELIEF RE: VERTICAL EXHAUSTION

29. Ecolab repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

30. An actual controversy of a justiciable nature presently exists between Ecolab and ACE with respect to the rights and duties of ACE under the Policies.

31. Ecolab contends, and ACE disputes that, subject to applicable terms of the Policies, ACE's obligations attach upon the exhaustion of the specified, retained limit in the Policies, and without regard to whether the limits of primary policies issued in other years remain unexhausted. *See SantaFe Braun*, 52 Cal. App. 5th at 31.

32. The controversy is of sufficient immediacy to justify the issuance of a declaratory relief.

33. Ecolab accordingly seeks a declaration from the Court that:

a. ACE's obligations under the Policies attach upon the exhaustion of the specified, retained limit in the Policies, and without regard to whether the limits of primary policies issued in other years remain unexhausted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ecolab demands judgment and prays that this Court grant relief as follows:

1. On its First and Second Claims for Relief, for a declaratory judgment in favor of Ecolab and against ACE declaring that:

   a. Ecolab may choose which of the Policies or policy year(s) will be required to pay up to its or their applicable policy limits for the Slamer Lawsuit;

   b. When coverage under the Policies, or in that policy year, is exhausted, Ecolab may select additional policies or policy years to provide coverage, until Ecolab is made whole for its losses in the Slamer Lawsuit; and

   c. ACE's obligations under the Policies attach upon the exhaustion of the specified, retained limit in the Policies, and without regard to whether the limits of primary policies issued in other years remain unexhausted.

2. As to all Claims for Relief, an award of such other and further relief that the Court deems just and proper.

DATED: January 11, 2023

Respectfully submitted,

COVINGTON & BURLING LLP
CHRISTINE S. HASKETT
HEATHER W. HABES

By: _____
HEATHER W. HABES

Attorneys for Plaintiff
ECOLAB INC.

## DEMAND FOR JURY TRIAL

Ecolab requests a trial by jury on all issues so triable.

DATED: January 11, 2023

Respectfully submitted,

COVINGTON & BURLING LLP
CHRISTINE S. HASKETT
HEATHER W. HABES

By: _____
   HEATHER W. HABES

Attorneys for Plaintiff
ECOLAB INC.