# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

ECOLAB INC.,

     Plaintiff,

     v.

ACE PROPERTY AND CASUALTY
INSURANCE COMPANY,

     Defendant.

Case No.: 0:23-cv-01259-ECT-ECW

Hon. Eric C. Tostrud

Mag. Judge Elizabeth Cowan Wright

## <u>ECOLAB INC.'s MEMORANDUM OF LAW IN SUPPORT OF</u>

## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

    A.    Ecolab Purchased Insurance to Protect Itself Against Liability
           Claims. ................................................................................................... 3

    B.    Plaintiffs Filed OxyCide Lawsuits Against Ecolab in California. ............... 4

    C.    Chubb Insisted on Exhaustion of Retained Limits in All Triggered
           Policy Periods. ....................................................................................... 7

    D.    Ecolab Settled the OxyCide Lawsuits. ........................................................ 8

    E.    Case History and Status .............................................................................. 9

LEGAL STANDARD ............................................................................................... 11

ARGUMENT ............................................................................................................. 11

I.     California Law Governs the Application of the Policies to the OxyCide
     Lawsuits. ........................................................................................................... 11

    A.    In Insurance Coverage Disputes, Minnesota Courts Apply the Law
           of the Jurisdiction Where the Insured Loss Occurred. ............................... 11

    B.    California Law Also Applies Under Minnesota's Significant
           Contacts Test for Choice of Law ............................................................... 13

           1.    Predictability of Result = California or Neutral ............................... 14

           2.    Maintenance of Interstate Order = California ................................... 14

           3.    Simplification of Judicial Task = California or Neutral .................. 15

           4.    Advancement of Forum Government's Interest = California .......... 17

           5.    Which State Has Better Law = California or Neutral ...................... 18

II.    Even if Minnesota Law Applies, Ecolab Need Pay Only One Retained
     Limit for the *Slamer* Lawsuit. ........................................................................ 19

CONCLUSION ......................................................................................................... 21

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aerojet-General Corp. v. Transport Indemnity Co.*,
    17 Cal. 4th 38 (1997) ................................................................ 16

*American States Ins. v. Mankato Iron & Metal*,
    848 F. Supp. 1436 (D. Minn.1993) .......................................... 14

*Brennan v. Cass County Health*,
    No. 21-CV-1900, 2023 WL 121943 (D. Minn., Jan. 6, 2023)................... 15

*Brennan v. Cass County Health, Human and Veteran Services*,
    93 F.4th 1097 (8th Cir. 2024) .................................................. 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................ 11

*Domtar, Inc. v. Niagara Fire Ins. Co.*,
    563 N.W.2d 724 (Minn.1997).................................................. 19

*Hime v. State Farm Fire & Cas. Co.*,
    284 N.W.2d 829 (Minn. 1979)............................................*passim*

*Jepson v. General Cas. Co. of Wisconsin*,
    513 N.W.2d 467 (Minn. 1994)............................................ 2, 13

*Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*,
    313 U.S. 487 (1942)................................................................ 11

*Med. Graphics Corp. v. Hartford Fire Ins. Co.*,
    171 F.R.D. 254 (D. Minn. 1997)........................................*passim*

*Montrose Chem. Corp. v. Super*
    9 Cal. 5th 215, 227 (2020) .......................................... 15, 16, 17

*Montrose Chem. Corp. v. Admiral Ins.*
    10 Cal. 4th 645, 673 (1995) .................................................... 15

*Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*,
    604 N.W.2d 91 (Minn. 2000).......................................... 12, 13, 14

*Perry, Trustee for Sherrell v. Beltrami County*,
    520 F. Supp. 3d 1115 (D. Minn. 2021) (Tostrud, J.) .................................................... 15

*Pitman Farms v. Kuehl Poultry LLC*,
    676 F. Supp. 3d 741 (D. Minn. 2023) (Tostrud, J.) ......................................... 15, 16, 18

*In re Silicone Implant Ins. Coverage Litig.*,
    667 N.W.2d 405 (Minn. 2003) .................................................................... 2, 6, 19, 20

*U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*,
    726 F. Supp. 740 (D. Minn. 1989), *aff'd*, 920 F.2d 487 (8th Cir. 1990) ..................... 12

*Walsh v. United States*,
    31 F.3d 696 (8th Cir. 1994) ......................................................................... 11

*Watson v. Employers Liability Assurance Corp.*,
    348 U.S. 66, 75 S. Ct. 166, 99 L. Ed. 74 (1954) .................................................. 17, 18

**Other Authorities**

Fed. R. Civ. P. 56 .......................................................................................... 11

# INTRODUCTION

Ecolab Inc. is a Minnesota-based company that provides water, hygiene, and infection prevention solutions and services throughout the United States. Beginning several years ago, Ecolab was sued by dozens of plaintiffs in California for alleged bodily injuries arising from exposure to its OxyCide product (the "OxyCide Lawsuits") and turned to its insurer, ACE Property and Casualty Insurance Company ("Chubb"), to provide coverage for those lawsuits. Chubb agrees that the lawsuits triggered coverage under certain liability insurance policies Chubb issued to Ecolab from December 31, 2011 to December 31, 2020 (collectively, the "Policies").

The parties dispute, however, how many "retained limits" Ecolab has to pay before Chubb provides coverage under the Policies. Ecolab asserts that California law applies, and under California law, Ecolab may select one policy year during the time the injuries in the OxyCide Lawsuits occurred, and pay one retained limit. But even if Minnesota law applies, Ecolab still is only required to pay one retained limit for the *Slamer* lawsuit—the largest suit in dispute—because the injuries in that case all arose from a discrete and identifiable event.[1] By contrast, Chubb contends that, under its view of Minnesota law, Ecolab must pay multiple retained limits during the policy periods in which the alleged injuries occurred. Chubb is incorrect that Minnesota law applies and is

---

[1] Under Minnesota law, Ecolab would be entitled to the same coverage for the *Slamer* lawsuit as it would under California law. However, as explained in further detail below, Ecolab would not be entitled to coverage from Chubb for the other OxyCide Lawsuits under Minnesota law, unlike under California law.

incorrect that Minnesota law requires Ecolab to pay more than one retention for the *Slamer* lawsuit.

Applying Minnesota choice-of-law rules, California law governs this dispute for two primary reasons. First, Minnesota law provides that insurance disputes are governed by the law of the state in which the underlying loss occurred. *See Med. Graphics Corp. v. Hartford Fire Ins. Co.*, 171 F.R.D. 254, 262 (D. Minn. 1997). Here, all of the losses at issue occurred in California. The OxyCide Lawsuits were filed against Ecolab in California for injuries sustained in California, based on products that were distributed and used in California. In addition, the OxyCide Lawsuits were litigated and ultimately settled in California.

Second, even if the *Medical Graphics* case had not already addressed the issue, California law applies under the significant contacts test used in Minnesota to determine choice of law. *Jepson v. General Cas. Co. of Wisconsin*, 513 N.W.2d 467, 470 (Minn. 1994). Applying California law, Ecolab must pay only one retained limit for all the OxyCide Lawsuits.

But even if Minnesota law applies, Ecolab still must only pay a single retained limit for the *Slamer* lawsuit, because that lawsuit arose from a discrete and identifiable event that triggers coverage only under the policy in effect when the event occurred. *See In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 421 (Minn. 2003). Indeed, the plaintiff's allegations in the *Slamer* lawsuit are directly analogous to the allegations by the plaintiffs in the *In re Silicone Implant* case, in which the Minnesota Supreme Court found that only one policy period, and therefore only one retention, should apply.

Ecolab respectfully requests, pursuant to the undisputed documentary evidence and agreement to resolve these threshold legal issues through early motions for partial summary judgment, that the Court issue an order finding that California law applies to this dispute and therefore Ecolab must only pay a single retained limit for the OxyCide Lawsuits, or in the alternative, that the *Slamer* lawsuit arose from a discrete and identifiable event under Minnesota law and therefore Ecolab must only pay a single retained limit for the *Slamer* lawsuit.

## FACTUAL BACKGROUND

**A.       Ecolab Purchased Insurance to Protect Itself Against Liability Claims.**

To protect itself against claims by third parties, Ecolab purchased nine consecutive insurance policies from Chubb, spanning December 31, 2011 to December 31, 2020, for which Chubb collected substantial premiums.  Declaration of Max Brummel ("Brummel Decl.") ¶ 3, Ex. 1.[2]

Section I.A of the Insuring Agreement in the Policies states that Chubb "will pay on behalf of the 'insured' those sums in excess of the 'retained limit' that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies."  Brummel Decl. Ex. 1 at 9.  The Policies apply to "bodily injury" that is caused by an "occurrence" and occurs during the "policy period."  *Id.*

---

[2] Because the material terms of the Policies relevant to the dispute between the parties are identical, citations to policy provisions below use one example for simplicity.

The Policies, as modified by the "Retained Limit Amendatory Endorsement – No Underlying Insurance" (the "Retained Limit Endorsement"), define "retained limit" to mean "the total applicable self-insured limits listed in the Schedule of Retained Limits below." *Id.* at 92. The Retained Limit Amendatory Endorsement includes a table that states, in relevant part, that the "Retained Limit" is $5,000,000 for "Each Occurrence." *Id.* at 94.

The Policies contain no choice of law provisions. *See generally* Brummel Decl. Ex. 1. However, they include endorsements contemplating performance in California. For example, the Chubb Policies list the City of Los Angeles and the Los Angeles World Airport as additional insureds by specific endorsement. *See*, *e.g.* Brummel Decl. Ex. 1 at 79–80. Likewise, the underlying AIG policy, over which the Chubb Policy sits and to which the Chubb policy makes specific reference, lists California State University, Fullerton as an additional insured. *Id.* at 3; Brummel Decl. Ex. 2 (AIG Policy) at 46.

**B.    Plaintiffs Filed OxyCide Lawsuits Against Ecolab in California.**

Ecolab has been sued by dozens of plaintiffs in California for alleged injuries resulting from exposure to OxyCide, including in a lawsuit filed by Jennifer Slamer and Christopher Slamer in the Superior Court of the State of California for the County of San Bernardino (Case No. CIVDS1709131) (the "*Slamer* lawsuit") and a lawsuit filed by Ronny Garcia, Mia Gonzalez, and Andreas Lopez in the United States District Court, Central District of California, Case No. 2:22-CV-07895 RGK-MARx (the "*Garcia* lawsuit"). Declaration of Christine Haskett ("Haskett Decl.") Exs. 6–7. OxyCide is a disinfectant used in hospitals. Plaintiffs alleged that one of OxyCide's component

chemicals, peracetic acid, is a respiratory sensitizer that causes asthma, immune responses, and adverse respiratory effects, even at low levels of exposure. Haskett Decl. Ex. 6 ¶ 3, 131; Ex. 7 ¶ 4. The plaintiffs alleged that their exposure to OxyCide caused a continuous injury called "sensitization"—a condition that results in the plaintiff having frequent and increasingly severe allergic reactions to chemicals and/or scents. Haskett Decl. Ex. 6 ¶ 37; Ex. 7 ¶ 63.

As alleged in the *Slamer* lawsuit, Plaintiff Jennifer Slamer was employed as a registered nurse at Kaiser Permanente, a hospital in Fontana, California. She alleged that OxyCide was first introduced at Kaiser Permanente for disinfecting various surfaces at the hospital beginning in June 2015, and "shortly after Kaiser Defendant began using the OxyCide Cleaning Products; Plaintiff Jennifer Slamer began experiencing burning sensations in her nose, eyes, and throat whenever Kaiser Environmental Services Staff Workers ('EVS Staff Workers') used the product." Haskett Decl. Ex. 6 (Slamer Third Am. Compl.) ¶ 29. Ms. Slamer claimed that her exposure to OxyCide caused her to suffer from the continuous injury of sensitization. *Id.* Ms. Slamer did not allege that she was exposed to OxyCide after 2016. *See generally* Haskett Decl. Ex. 6.

The *Slamer* lawsuit went to trial in late January 2023 and included extensive testimony regarding Ms. Slamer's allegations. At trial, Ms. Slamer testified that the hospital started using OxyCide in 2015 and that she was exposed to it on several occasions between that time and February 2016. Haskett Decl. Ex. 8 (Feb. 6, 2023 Trial Transcript) at 91:5–7, 91:8–11. Ms. Slamer testified at trial that due to her exposures, she suffered from "burning eyes, running eyes, burning nose, burning throat" symptoms. *Id.*

at 91:25–92:8.  She further testified that she reported the health effects from these exposures to the charge nurse at the hospital.  *Id.* at 93:3–7.

Ms. Slamer presented an expert at trial, Dr. Harrison, who testified that in his opinion, an initial exposure to OxyCide results in continuing health problems because "sensitization occurs over time" and can take "months, sometimes years, before the body's immune system reacts to the chemical."  Haskett Decl. Ex. 9 (Feb. 22, 2023 Trial Transcript) at 29:1–3, 30:1–4.  In his opinion, "Ms. Slamer gradually had a sensitization . . . that [had] built up over a period of several months."  *Id.* at 30:5–7.  Ecolab disputed and continues to dispute Ms. Slamer's allegations and the testimony of her experts, based on contrary evidence, but as discussed in further detail below, for the purposes of this coverage litigation only, the Court may rely on the testimony of Ms. Slamer and her experts solely to determine the insurance issues.  *See In re Silicone Implant*, 667 N.W.2d at 416.

Ecolab was sued on similar grounds in the *Garcia* lawsuit and dozens of additional lawsuits in California for alleged injuries resulting from the use of OxyCide.  *See*, *e.g.*, Haskett Decl. Ex. 7 (Garcia Compl.) ¶¶ 25–31.  All of the OxyCide Lawsuits alleged some form of exposure and "sensitization" occurring during periods covered by one or more of the Policies.[3]

---

[3] Ecolab was also sued on similar grounds in a number of lawsuits in Minnesota.  Ecolab notified Chubb of those lawsuits, but given the weak nature of the plaintiffs' claims under Minnesota law, Ecolab has never pursued coverage from Chubb for any of the Minnesota lawsuits.

**C.      Chubb Insisted on Exhaustion of Retained Limits in All Triggered Policy Periods.**

By letter dated December 1, 2022, Chubb acknowledged that each of the Policies "generally provides that coverage, if any, is afforded for those sums in excess of the 'retained limit' that the 'insured' becomes obligated to pay as damages because of 'bodily injury' to which the policy applies, but only if the 'bodily injury' occurs during the 'policy period' and is caused by an 'occurrence.'"  Brummel Decl. Ex. 5.  Chubb did not dispute that Ms. Slamer alleged "bodily injury" or that her alleged injuries occurred during the "policy period" or that they were caused by an "occurrence."  *Id.* at 3.

Chubb contended, however, that it had no obligation to provide coverage until Ecolab demonstrated that the "retained limit" had been satisfied, and the "retained limit," in Chubb's view, meant the retained limit for each policy period during the time that Ms. Slamer was exposed to OxyCide, *i.e.*, the 2014-2015 and 2015-2016 policy periods.  *Id.* By email dated December 20, 2022, Ecolab asked Chubb to explain its position further. Ecolab Amended Complaint (ECF 106) ¶ 27.  On January 3, 2023, Chubb responded by simply reiterating its position that "[C]overage (if any) under the [Chubb] excess policies would only be excess of the corresponding underlying policies, e.g., the 2014-15 and 2015-16 [] Policies, as applicable."  *Id.* ¶ 28.[4]

_____

[4] The "underlying policies" are fronting policies that overlap with the retained limits for each policy period, meaning that the fronting insurer covers those amounts in the first instance and then is reimbursed by Ecolab.

**D.    Ecolab Settled the OxyCide Lawsuits.**

The *Slamer* lawsuit settled on April 19, 2023.  *Id.* ¶ 37.  Chubb contended that Ecolab was required to pay two retained limits:  one for the 2014-2015 policy period and one for the 2015-2016 policy period.  Ecolab disagreed and asserted that California law applied, meaning that it was permitted to target a single policy period and therefore would be responsible for only one retained limit.  Subject to a reservation of rights, Chubb agreed that Ecolab could pay one retained limit and Chubb would pay the remainder of the settlement.  The parties agreed Chubb's payment was without prejudice to any coverage dispute between Ecolab and Chubb, including as to the number of retained limits.

Following payment of the settlement in the *Slamer* lawsuit, which satisfied the sole applicable retention, Chubb became responsible under California law for payment of all defense and indemnity in the other OxyCide Lawsuits.  Ecolab reminded Chubb of that obligation by letter on September 14, 2023.

On or around December 4, 2023, Ecolab settled the remaining OxyCide Lawsuits.  Ecolab Amended Complaint (ECF 106) ¶ 44.  Since the *Slamer* settlement, Ecolab has incurred substantial additional defense fees and costs for the OxyCide Lawsuits, all in California.  *Id.* ¶ 42.  To date, Chubb has not made any payments for defense or indemnity in any of the OxyCide Lawsuits other than the *Slamer* lawsuit.  *Id.* ¶ 52.

An additional dispute between the parties concerns whether Chubb has to pay the defense fees and costs incurred by Ecolab's indemnitee, Kaiser Permanente, in

connection with the *Slamer* lawsuit. *Id.* ¶ 78. Again, these amounts were all incurred in California. *Id.* To date, Chubb has paid nothing towards these covered defense fees and costs. *Id.*

### E. Case History and Status

On January 11, 2023, Ecolab filed a Complaint for Declaratory Relief against Chubb in the Central District of California (the "California Action") focused on insurance recovery for its losses in the *Slamer* lawsuit. On March 20, 2023, Chubb filed a Complaint (and later an Amended Complaint) for Declaratory Relief against Ecolab in the District of Minnesota (the "Minnesota Action"), which added several references to lawsuits filed against Ecolab in Minnesota for which Ecolab has never pursued coverage. On May 3, 2023, the California court transferred the California Action to Minnesota without reaching the parties' dispute as to the proper choice of law. The parties subsequently agreed through stipulation, approved by the Court, to consolidate the parties' two cases by dismissing the Minnesota Action and allowing Chubb to plead its claims by filing a counterclaim in the action originally brought by Ecolab in California and transferred to Minnesota. Pursuant to that stipulation and order, Ecolab submitted an Amended Complaint on August 23, 2024, to which Chubb filed its Answer and Counterclaims on September 27, 2024.

One of the key dispositive issues in this case is the proper choice of law. As illustrated in the graphic below (simplified to show only two lawsuits instead of the full number of OxyCide Lawsuits), under California law, Ecolab would have the ability to select one policy year during the time the continuing injuries alleged in the OxyCide

Lawsuits occurred, and pay only one retained limit for all of the lawsuits ("RL"). Chubb would then be responsible for all defense and indemnity for all of the lawsuits above the retained limit. Alternatively, under Minnesota law, Ecolab would pay one retained limit for the policy period in which a discrete and identifiable event occurred for each of the OxyCide Lawsuits, and Chubb would be responsible for any defense and indemnity above that retained limit for each lawsuit.



The parties have jointly agreed to early partial summary judgment proceedings to resolve two of the key issues in this case: (1) whether California or Minnesota law applies to the coverage dispute, and (2) if Minnesota law applies, how it applies to the insurance policies at issue with respect to the *Slamer* lawsuit. To avoid duplicative cross-motions of fundamentally overlapping issues, the parties jointly proposed, and the Court approved, a single-tracked briefing schedule that affords both parties a chance to submit an initial and reply brief.

## LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the issues in dispute between the parties are "primarily legal rather than factual, summary judgment is particularly appropriate." *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir. 1994). As there is no reasonable dispute as to any facts material to this motion, the Court may resolve the issues presented as a matter of law.

## ARGUMENT

### I. California Law Governs the Application of the Policies to the OxyCide Lawsuits.

To determine the applicable state law in a federal diversity case such as this one, the Court must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496 (1942). Minnesota's choice-of-law principles support the application of California law to this insurance dispute.

#### A. In Insurance Coverage Disputes, Minnesota Courts Apply the Law of the Jurisdiction Where the Insured Loss Occurred.

When the insurance policy at issue does not include a choice of law provision, Minnesota courts generally apply the law of the state where the insured losses occurred, rather than the law of the state where the insurance policy was issued or where the insured was a resident. *See Med. Graphics*, 171 F.R.D. at 262 (holding Minnesota law governed application of insurance policies issued in California to a California insured when underlying action was filed, litigated, and settled in Minnesota); *Hime v. State*

*Farm Fire & Cas. Co.*, 284 N.W.2d 829, 833 (Minn. 1979) (holding Minnesota law governed application of insurance policies issued in Florida to a Florida resident when underlying accident occurred in Minnesota); *see also U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co*., 726 F. Supp. 740, 744 (D. Minn. 1989), *aff'd*, 920 F.2d 487 (8th Cir. 1990) ("What the Minnesota Supreme Court stated in *Hime* applies equally to insurance for products liability actions:  the insurance protection has no geographical boundaries 'and it is foreseeable that the insured may meet his misfortune out of the state of issuance' of a policy.") (citation omitted).

Minnesota courts similarly hold that the location of the injury controls even when the standard choice-of-law factors are neutral.  In *Nodak*, for example, the Court held that "when all other relevant choice-of-law factors favor neither state's law, the state where the accident occurred has the strongest governmental interest; accordingly, the law of the state where the accident occurred should be applied."  *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 96 (Minn. 2000).

Here, the underlying product liability disputes occurred entirely in California.  All of the indemnity and defense costs that Ecolab seeks are for underlying lawsuits that were filed, defended, and resolved in California; the bodily injuries alleged in the underlying lawsuits all occurred in California; and the use of OxyCide—from which the alleged bodily injuries purportedly arose—also occurred in California.

Any arguments Chubb may make to undermine these facts are untethered to the facts surrounding Ecolab's covered losses.  In an attempt to support the application of Minnesota law, Chubb's original follow-on suit and its new counterclaim in this case

both reference some OxyCide lawsuits against Ecolab that were filed in Minnesota—suits for which Ecolab has never pursued insurance coverage.  Because those lawsuits were all either dismissed or settled for extremely small amounts (well below the retention under any interpretation), Ecolab has never asked Chubb to pay anything for them, has not referred to them in any of its litigation claims against Chubb, and has not mentioned them in any of its pleadings in this case.  Those lawsuits are irrelevant to this litigation, and Chubb's attempt to manufacture a dispute between the parties involving those cases when there is none is a transparent attempt by Chubb to avoid the application of California law.  Based on the disputes that actually exist in this case, all of which involve the OxyCide Lawsuits in California, there is no basis to deviate from the precedents set by *Med. Graphics*, *Hime*, and *Nodak*.

### B.    California Law Also Applies Under Minnesota's Significant Contacts Test for Choice of Law.

Even if this Court were to apply its own choice of law analysis without deferring to *Med. Graphics*, *Hime*, or *Nodak*, California law would still apply.  When a conflict of laws issue exists, Minnesota has adopted a form of significant contacts test to resolve which state's law to apply.  *Jepson*, 513 N.W.2d at 470.[5]  The significant contacts test entails analysis of five "choice-influencing" factors:  (1) predictability of result, (2) maintenance of interstate and international order, (3) simplification of the judicial task,

---

[5] Although this inquiry is technically a three-step process, the first two steps (the existence of an actual conflict between California and Minnesota law and whether both states' laws can be constitutionally applied) are not in dispute between the parties, who have agreed to proceed with this motion accordingly.  *See* Stipulation and Joint Motion to Consolidate Related Cases and Proceed with Early Summary Judgment Phase (ECF 104).

(4) advancement of the forum government's interest, and (5) which state has better law. *Id.*; *Nodak*, 604 N.W.2d at 94.

1.    Predictability of Result = California or Neutral

This factor favors the application of California law to this case.  Minnesota courts have interpreted "predictability of result" to favor the state where the insured risk occurred, not where the contract was made.  *Med. Graphics*, 171 F.R.D. at 260 (finding insurer "was on notice that its insured was at risk of suit in other states" and rejecting insurers' assertions that the law of the state in which the contract was issued controls choice of law); *see also American States Ins. v. Mankato Iron & Metal*, 848 F. Supp. 1436, 1443 (D. Minn.1993) ("predictability of result is not advanced by applying the law of the State in which the insurance contract arose"); *Hime*, 284 N.W.2d at 833 (holding it was "foreseeable that the insured may meet his misfortune out of the state of issuance" of the insurance policy and applying law where the loss occurred).  Ample evidence supports that California was the foreseeable location of the insured risk here, particularly as (1) the Policies themselves specifically contemplate California as an anticipated place of performance of the contract, Brummel Decl. Ex. 1 (Chubb Policy) at 3, 79–80; Ex. 2(AIG Policy) at 227; and (2) all of the losses that have given rise to this insurance claim were in California.

2.    Maintenance of Interstate Order = California

This factor also heavily favors application of the law of the jurisdiction where the underlying injuries and action occurred.  *Med. Graphics*, 171 F.R.D. at 262 ("This consideration requires that the State, whose laws are ultimately applied, 'have sufficient

14

connection with the facts at issue.'"). For this factor, "[t]he primary focus is on the contacts that each competing state has with the dispute." *Perry , Trustee for Sherrell v. Beltrami County*, 520 F. Supp. 3d 1115, 1123 (D. Minn. 2021) (Tostrud, J.) (holding that law of the state where injury occurred applied over Minnesota law); *see also Brennan v. Cass County Health*, No. 21-CV-1900 (ECT/LIB), 2023 WL 121943, at *9 (D. Minn., Jan. 6, 2023), *aff'd sub nom. Brennan v. Cass County Health, Human and Veteran Services*, 93 F.4th 1097 (8th Cir. 2024) (same).

### 3. Simplification of Judicial Task = California or Neutral

When Minnesota courts evaluate this factor, they routinely determine that they are equipped to handle other states' laws, leading them typically to conclude that this factor is neutral. *Med. Graphics*, 171 F.R.D. at 262; *see also Pitman Farms v. Kuehl Poultry LLC*, 676 F. Supp. 3d 741, 756 (D. Minn. 2023) (Tostrud, J.) (finding this factor neutral when there are not significant "complexities posed by another state's law" and that this factor is "comparatively unimportant").

Applying California law will not impose any special burdens here, as there is ample published authority on the parties' exact dispute, summarized as follows:

- **Continuous Injury Trigger.** California law applies a so-called "continuous injury trigger," allowing continuous or progressively deteriorating injuries to "trigger" each policy that was in effect during the entire period of injury. *Montrose Chem. Corp. v. Super. Ct.*, 9 Cal. 5th 215, 227 (2020) ("Montrose II"); *see also Montrose Chem. Corp. v. Admiral Ins.* Co., 10 Cal. 4th 645, 673 (1995) ("Montrose I") ("[B]odily injury and property damage that is continuous or progressively deteriorating throughout

successive CGL policy periods, is potentially covered by all policies in effect during those periods.").

- **All Sums Rule.** California law also provides that when a policy is triggered by injury during the policy period, the insurer has a duty to "indemnify the insured for the *entirety* of the ensuing damage or injury, up to the policy's limit," subject to satisfaction of any required retention or underlying limit. *Montrose II*, 9 Cal.5th at 227. This is known as the "all sums" rule. *Id.*; *see also Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 57 (1997).

- **Vertical Exhaustion**. To effectuate the all sums rule, the California Supreme Court has held that an insured must have "immediate access to the insurance it purchased" by allowing the insured to select the policy period for which it wishes to recover and to pursue the policies in that period alone by "vertically" accessing the policies that were in effect during that period. *Montrose II*, 9 Cal. 5th at 236. California courts have held that requiring a policyholder to pursue coverage from all policies in different policy periods during the time that injuries occurred would create an unwarranted "obstacle" to the insured's right to access immediately the policies it purchased in any particular year. *Id.* at 235.

This detailed authority from California's highest court sets forth clear parameters that this Court can apply to determine that the OxyCide Lawsuits present continuous or progressive injury claims and that Ecolab is entitled to access one policy year and pay only one retained limit, should further proceedings even be necessary.

### 4. Advancement of Forum Government's Interest = California

This factor is intended to ensure that Minnesota courts "are not called upon to apply rules of law inconsistent with Minnesota's concept of fairness and equity." *Med. Graphics*, 171 F.R.D. at 263. In applying this factor, Minnesota courts have recognized that a state has a "legitimate state interest" in providing recovery to those who are injured and treated within its borders. *See Hime*, 284 N.W.2d at 833–34 ("Providing recovery to those injured and treated within [a state's] borders is a legitimate state interest that was recognized by the Supreme Court in *Watson v. Employers Liability Assurance Corp.*, 348 U.S. 66, 75 S. Ct. 166, 99 L. Ed. 74 (1954).").

The practical effect of California law is an insurance trigger and exhaustion rule that is more protective of the policyholder's interest in being made whole for a covered loss, and therefore having the ability to pay fully the underlying claims against it. Under California law, the continuous injury trigger applies to the OxyCide Lawsuits, *i.e.*, the underlying lawsuits allege that exposure to OxyCide caused a continuous injury called "sensitization"—a condition that results in the plaintiff having frequent and increasingly severe allergic reactions to chemicals and/or scents. As a result, each policy in effect when the continuous injuries occurred is triggered. And California also follows the "all sums" rule, which requires any triggered policy to "indemnify the insured for the entirety of the ensuing damage or injury, up to the policy's limit," subject to satisfaction of the policy's terms and conditions, such as exhaustion of any required retention or underlying limit. *Montrose II*, 9 Cal. 5th 215, 227 (2020). To effectuate the all sums rule, the policyholder is entitled to select the policies from which it wishes to recover and exhaust

vertically. *Id.* at 235. Applying California law here, Ecolab may target a specific policy period for recovery of the OxyCide Lawsuits and pay one retained limit for that targeted year for all of the OxyCide Lawsuits combined.

Although Ecolab recognizes the likely inclination of a Minnesota court to prefer the law of its own jurisdiction, the particular dispute here presents an important opportunity to recognize generally that claimants injured within California are entitled to recover fully. Ensuring that the plaintiffs injured and treated in California receive the maximum insurance coverage proceeds available under California law is consistent with the principles of fairness and equity favored by Minnesota law, including the "legitimate state interest" in ensuring "recovery to those injured and treated" in another state. *See Hime*, 284 N.W.2d at 833–34.

### 5. Which State Has Better Law = California or Neutral

Courts typically only consider this factor as a tiebreaker if the other four factors do not clearly resolve the choice of law question. *Med. Graphics*, 171 F.R.D. at 263; *see also Pitman Farms*, 676 F. Supp. 3d at 757 (finding this factor "does not apply at all when a court can resolve a choice-of-law question using the other four factors"). The Court therefore need not reach this issue to find that California law applies here.

Even if the Court were to consider this factor, there would be a strong basis for applying California law. As discussed in further detail above, California law is the most protective of the interest in ensuring that policyholders who are injured in California fully recover their losses.

Accordingly, under Minnesota's choice-of-law rules, California law should apply.

## II. Even if Minnesota Law Applies, Ecolab Need Pay Only One Retained Limit for the *Slamer* Lawsuit.

Although Minnesota's trigger and allocation rules are distinct from those of California, there is no difference with regard to Chubb's liability for the *Slamer* lawsuit. Specifically, under Minnesota law, if a continuing injury can be traced back to a "discrete and identifiable event" or "discrete occurrence," then "policies on the risk at the time of that event are liable for all sums arising from the event," meaning that only the retained limit for that single policy period would apply. *See In re Silicone Implant*, 667 N.W.2d at 421. In *In re Silicone Implant*, the Minnesota Supreme Court held that alleged continuing injuries to patients resulting from defective breast implants triggered the policy in place at the "time of implant," even though leakage, and therefore exposure, from those implants did not only occur at the time of implant but likely occurred continuously over time. *Id.* at 422. Citing further support for this concept in *Domtar, Inc. v. Niagara Fire Ins. Co.,* 563 N.W.2d 724 (Minn.1997), the Minnesota Supreme Court went on to explain that allocation of such a continuing injury over multiple years "is meant to be the exception and not the rule." *Id.* at 421. The Supreme Court concluded: "If we can identify a discrete originating event that allows us to avoid allocation, we should do so." *Id.* at 421–22.

The alleged injuries in the *Slamer* lawsuit are identical in all relevant respects to those in *In Re Silicone Implant*. In particular, Ms. Slamer alleged continuing injuries, including sensitization, arising from her first exposure to OxyCide in Kaiser facilities in summer 2015. Haskett Decl. Ex. 6 (Slamer Third Am. Compl.) ¶ 29; Ex. 8 (Feb. 6, 2023

Trial Transcript) at 91:5–7, 91:8–11.  Although, as with the continuing leakage and

exposure in *In Re Silicone Implant*, there was continuing exposure to OxyCide over time

(from 2015 to February 2016), Ms. Slamer's alleged injuries can be traced back,

according to the opinion of the expert who advanced Ms. Slamer's causation theory and

Ms. Slamer's own testimony regarding the timing of her alleged injuries, to the "discrete

and identifiable event" of Ms. Slamer's first exposure to OxyCide.  Haskett Decl. Ex. 8

(Feb. 6, 2023 Trial Transcript) at 91:25–92:8, 93:3–7.

       That underlying testimony, although disputed by Ecolab, is sufficient for this

Court to determine that the alleged losses rose from a discrete and identifiable event.

Like Ecolab in the *Slamer* lawsuit, the defendants in *In re Silicone Implant* vigorously

disputed the theory of harm and causation presented in the pleadings and testimony.  667

N.W.2d at 416.  Nonetheless, the Minnesota Supreme Court determined that it could, for

the limited purposes of the insurance coverage litigation, assume that the plaintiffs'

injuries were authentic and caused by the alleged event.  *Id.* ("[W]e conclude for

purposes of this insurance coverage litigation, which arises from a settlement that is

premised on the notion that silicone gel breast implants caused plaintiffs' injuries, that the

district court properly assumed the plaintiffs' injuries are authentic and were caused by

the silicone gel breast implants.").  The settlement of the *Slamer* lawsuit should be

considered dispositive on the "discrete and identifiable event" issue for the same reasons.

       Under Minnesota law, therefore, the existence of a "discrete and identifiable

event" in the *Slamer* lawsuit dictates the policy year (2014-2015), with all sums arising

from the event to be paid in that year.  The result is that Ecolab is responsible for only a

single retained limit for the *Slamer* lawsuit for that policy year, even under the application of Minnesota law.[6]

## **CONCLUSION**

Based on the foregoing, Ecolab respectfully requests that the Court enter an order finding that California law applies to the coverage dispute in this case. In the alternative, if the Court finds that Minnesota law applies, Ecolab requests that the Court find that the alleged injuries in the *Slamer* lawsuit arose from a discrete and identifiable event and that Ecolab is therefore responsible for only one retained limit for the *Slamer* lawsuit.

DATED: October 11, 2024

Respectfully submitted,

By: */s/ Aaron M. Johnson*

John B. Lunseth II (#065341)
Aaron M. Johnson (#034641X)
**TAFT STETTINIUS & HOLLISTER P.A.**
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: 612-977-8400
Fax: 612-977-8650
jlunseth@taftlaw.com;
ajohnson@taftlaw.com

Christine S. Haskett (*pro hac vice*)
Breanna K. Jones (*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower

---

[6] Ecolab recognizes that if Minnesota law is to be applied, it cannot recover from Chubb for the other OxyCide Lawsuits because although those suits also involved discrete and identifiable events, those events occurred in years different from the *Slamer* event and so the defense and indemnity for those other lawsuits does not reach above the retained limit for those other years.

415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
chaskett@cov.com; bjones@cov.com

Heather W. Habes (*pro hac vice*)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
hhabes@cov.com

**Attorneys for Plaintiff ECOLAB INC.**