**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

ECOLAB INC.,

      Plaintiff,

      v.

ACE PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Defendant.

Case No.: 0:23-cv-01259-ECT-ECW

Hon. Eric C. Tostrud

Mag. Judge Elizabeth Cowan Wright

---

## ECOLAB INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL

## SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.      Minnesota Choice-of-Law Rules Favor California Law. .......................... 2

      A.      Chubb Misrepresents the Scope of Ecolab's Claim for Coverage. .............. 3

      B.      Chubb Improperly Ignores the Many Indications that California Law Was Contemplated by the Parties in Favor of a Superficial Analysis Regarding Ecolab's Headquarters. ................. 5

      C.      The Choice-Influencing Factors Support the Application of California Law. ........................................................................ 7

            1.      Predictability of Result ....................................................... 7

            2.      Maintenance of Interstate Order ......................................... 9

            3.      Simplification of Judicial Task ...................................... 12

            4.      Advancement of Forum Government's Interest .............................. 13

            5.      Better Rule of Law ...................................................... 14

II.     Were Minnesota Law to Apply, the Injuries Alleged in the *Slamer* Lawsuit Can and Therefore Should be Ascribed to a Discrete and Identifiable Event Under the Controlling Authority. ......................................................... 14

CONCLUSION ................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American States Ins. v. Mankato Iron & Metal*,
848 F. Supp. 1436 (D. Minn.1993) ............................................................... 7

*Brennan v. Cass Cnty. Health*,
2023 WL 121943 .......................................................................................... 11

*Cargill, Inc. v. Evanston Ins. Co.*,
642 N.W.2d 80 (Minn. Ct. App. 2002) ..................................................... 4, 8

*Domtar, Inc. v. Niagara Fire Ins. Co.*,
552 N.W.2d 738 (Minn. Ct. App. 1996) ..................................................... 17

*Domtar, Inc. v. Niagara Fire Ins. Co.*,
563 N.W.2d 724 (Minn.1997)........................................................... 15, 17, 18

*General Cas. Co. of Wisconsin v. Wozniak Travel, Inc.*,
762 N.W.2d 572 (Minn. 2009) ..................................................................... 6

*Gimmestad v. Gimmestad*,
451 N.W.2d 662 (Minn. Ct. App. 1990) ................................................ 12, 13

*Hime v. State Farm Fire & Cas. Co.*,
284 N.W.2d 829 (Minn. 1979) .................................................................... 13

*Hughes v. Wal-Mart Stores, Inc.*,
250 F.3d 618 (8th Cir. 2001) ....................................................................... 13

*J.H. France Refractories Co. v. Allstate Ins. Co.*,
534 Pa. 29 (1993) ........................................................................................... 8

*Jepson v. Gen. Cas. Co. of Wis.*,
513 N.W.2d 467 (Minn. 1994)........................................................... 9, 11, 13

*Med. Graphics Corp. v. Hartford Fire Ins. Co.*,
171 F.R.D. 254 (D. Minn. 1997).........................................................*passim*

*Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*,
604 N.W.2d 91 (Minn. 2000).................................................................... 12

*Northern States Power Co. v. Fidelity and Cas. Co. of New York*,
    523 N.W.2d 657 (Minn. 1994) ................................................................. 17, 18

*Perry, Trustee for Sherell v. Beltrani Cnty.*,
    520 F. Supp. 3d 1115 (D. Minn. 2021) ........................................................ 11

*Pitman Farms v. Kuehl Poultry LLC*,
    676 F. Supp. 3d 741 (D. Minn. 2023) .......................................................... 14

*Schmelzle v. ALZA Corp.*,
    561 F. Supp. 2d 1046 (D. Minn. 2008) ........................................................ 10

*SCSC Corp. v. Allied Mut. Ins. Co.*,
    536 N.W.2d 305 (Minn. 1995), ................................................................... 18

*In Re Silicone Implant Insurance Coverage Litigation*,
    667 N.W.2d 405 (Minn. 2003) .......................................................... *passim*

*St. Paul Fire and Marine Ins. Co. v. A.P.I., Inc.*,
    738 N.W.2d 401 (Minn. Ct. App. 2007) ...................................................... 18

*St. Paul Mercury Ins. Co. v. N. States Power Co.*,
    2009 WL 2596074 (Minn. Ct. App. Aug. 25, 2009) .................................. 7, 8

*Vlahos v. R & I Constr.*,
    676 N.W.2d 672 (Minn. 2004) ...................................................................... 7

*Wohlert v. Hartford Fire Ins. Co.*,
    2013 WL 1249214 (D. Minn. Mar. 27, 2013) ............................................... 9

*Yahoo Inc. v. National Union Fire Ins. Co. et al.*,
    14 Cal. 5th 58 (2022) .................................................................................... 6

**INTRODUCTION**

The parties agree on the basic legal structure of the applicable choice of law test, and that there is a conflict between California and Minnesota law sufficient for this Court to decide the issue. From there, they diverge.

Chubb argues that Minnesota law should apply here based on two flawed assumptions. First, it insists this claim is about not just Ecolab's losses in California but also many previously dismissed underlying actions outside California. That is incorrect. Ecolab has only ever sought insurance coverage from Chubb for losses associated with the underlying California lawsuits; no other lawsuit is relevant to the choice of law analysis. Second, Chubb identifies the location of Ecolab's headquarters as a factor that should be considered in the Court's analysis, but it relies far too heavily on that single factor and unduly downplays the significance of Ecolab's numerous California contacts in the underlying matter including, most importantly, that all of the lawsuits underlying Ecolab's claim for coverage were brought and litigated in California. In doing so, Chubb ignores the case law supporting the application of California law here based on several facts: the injuries in California were predictable, California has the more significant contacts with the parties' dispute, and California has a governmental interest in making Ecolab whole. Those factors are dispositive in the choice of law analysis, and the Court should therefore find that California law applies.

Separately, the parties have agreed to seek a ruling on the manner in which Minnesota law would govern this case, were it to apply. Specifically, under Minnesota law, the controlling issue is whether the injuries alleged in the underlying *Slamer* lawsuit,

brought and litigated in California, arose from a "discrete and identifiable event." Minnesota law strongly favors finding the existence of a "discrete and identifiable event" whenever possible: "[i]f we can identify a discrete originating event that allows us to avoid allocation, we should do so." *In Re Silicone Implant Insurance Coverage Litigation*, 667 N.W.2d 405, 421-22 (Minn. 2003). In that case, the Minnesota Supreme Court rejected the insurers' attempt to analogize personal injuries, with a definitive starting point, to mass pollution cases in which no starting point could be identified. *Id.* at 417-20. This Court should adhere to that reasoning and reject the same argument here.

Accordingly, Ecolab respectfully requests that the Court issue an order finding that California law applies to this dispute, or in the alternative, that under Minnesota law, the *Slamer* lawsuit arose from a discrete and identifiable event.

## ARGUMENT

### I. Minnesota Choice-of-Law Rules Favor California Law.

The parties agree there is a conflict between California and Minnesota law. The parties also agree that Minnesota's choice of law rules govern the court's determination of the law that should apply to this dispute. Applying Minnesota's choice of law analysis, California law should apply; Chubb's conclusion to the contrary is premised on its incorrect definition of the scope of Ecolab's coverage claim, disproportionate emphasis on the location of Ecolab's headquarters, and an incorrect construction of the Policy. For these and the reasons set forth below, the Court should reject the application of Minnesota law to this dispute.

A.    **Chubb Misrepresents the Scope of Ecolab's Claim for Coverage.**

Chubb's threshold argument about constitutionality and all of its subsidiary arguments about the application of each choice-influencing factor arise from its assertion that this insurance coverage action involves "85 lawsuits" including "61 Minnesota-venued Lawsuits."  Chubb Opp. at 6, 9, 13, 21, 27, 29, 30.  This is simply not true. Neither Ecolab's complaint in this case, nor the previous iteration in California, included mention of any lawsuit brought against Ecolab outside of California.  And with good reason:  the OxyCide lawsuits against Ecolab outside of California either failed quickly on statute of limitations grounds or were settled for amounts too small to trigger coverage under Chubb's policies.[1]  Morgan Decl. ¶ 3.  Ecolab therefore never sought any type of payment from Chubb for those lawsuits.

Chubb asserts that Ecolab "reported" to Chubb a number of OxyCide lawsuits outside of California based on a hearsay exhibit to its attorney's declaration that lacks any foundation or explanation of its source.  Klein Decl. Ex. B.  That exhibit is not admissible evidence, but even if it were, the fact that Ecolab may have notified Chubb that there were additional lawsuits at some point would not mean that Ecolab ever sought coverage for any of those suits.  Such precautionary notices are routinely submitted for situations that may never materialize into an insurance claim.  Chubb has submitted no evidence that Ecolab pursued coverage for any lawsuit outside California, nor that Chubb issued a

---

[1] This experience is consistent with Ecolab's loss history overall, which, as discussed below, has consistently shown for decades that Ecolab's insured losses in California are much higher than in any other state, including Minnesota.  *See infra* at Section I.B.

coverage position indicating that it understood Ecolab to be pursuing such claims. Chubb's contention that Ecolab has sought coverage for more than the California OxyCide lawsuits is therefore nothing more than an after-the-fact invention designed solely to try to avoid the application of California law to this matter.[2]  This Court should give no weight to Chubb's fictitious coverage dispute regarding non-California claims. *See, e.g.*, *Cargill, Inc. v. Evanston Ins. Co.*, 642 N.W.2d 80, 87 (Minn. Ct. App. 2002) ("There is no genuine issue of material fact when the nonmoving party presents evidence creating only a metaphysical doubt as to a factual issue or the evidence is not sufficiently probative to permit reasonable persons to draw different conclusions.").

Finally, even if there were any merit to Chubb's contention that Ecolab has sought coverage for non-California OxyCide lawsuits—which there is not—Chubb's constitutionality argument would still fail.  *See* Chubb Opp. at 17.  Even aside from the fact that every one of the lawsuits for which Ecolab has sought coverage from Chubb was brought and litigated in California, Ecolab has a significant presence in California, including two major manufacturing facilities and a large portion of its sales.  Klein Decl. Ex. G. ¶¶ 3-4. Chubb cites no authority for the proposition that applying California law in this situation would be unconstitutionally arbitrary, and there is none.

---

[2] Chubb similarly has no basis for its statement that the non-California claims may be reasserted.  Chubb Opp. at 9.  As noted, not one of the many OxyCide cases outside California has been significant enough for Ecolab to seek coverage from Chubb, and Chubb's suggestion that they may happen in the future is groundless speculation.  *See* Morgan Decl. ¶ 4.

**B.      Chubb Improperly Ignores the Many Indications that California Law Was Contemplated by the Parties in Favor of a Superficial Analysis Regarding Ecolab's Headquarters.**

Because Chubb declined to include a choice of law provision in the Policy—which it certainly could have—the terms of the Policy and its surrounding factual context are the best evidence of which law was contemplated by the parties.  Here, there can be no doubt that the parties anticipated that a coverage suit may—indeed, was likely to—end up being governed by California law.  First, as Chubb admits, the Policy explicitly insures entities that are located solely in California.  *See* Ecolab Mot. at 8; Chubb Opp. at 12-13. Second, Chubb cannot contest that it was aware of Ecolab's potential and actual exposure in California at the time the policy was issued.  Every year at the time of policy renewal, Ecolab provides to Chubb loss histories from the preceding decade, showing the lawsuits that have been filed against Ecolab, including the location and amount of loss for each lawsuit.  Klein Decl. Ex. G. ¶ 6.  The loss history provided to Chubb at the time of placement of the Policy at issue here showed that California-based losses for the prior 13 years represented almost *one-third* of Ecolab's claim expenses for all 50 states during that time frame.  *Id.*  This was more than 34 times the Minnesota-based losses during that time.  *Id.*  Third, as Chubb was also aware, Ecolab's domestic manufacturing facilities are located across 14 states, and a significant portion of Ecolab's manufacturing takes place at two large sites in California.  Second Brummel Decl. ¶ 2.

Against this deep connection with California, Chubb's only point in its favor is that Ecolab has administrative headquarters located in Minnesota.  Ecolab does not perform any substantial commercial manufacturing in Minnesota, and as noted above, its

5

Minnesota-based losses are a tiny fraction of its California-based and nationwide losses.

Chubb asserts that the OxyCide product is manufactured in Minnesota, Chubb Opp. at 5,

but again, that is incorrect.  Chubb cites to a document that is intended to show only that

OxyCide is a product sold by Ecolab's Specialty Chemicals business, which has its

headquarters in Minnesota; OxyCide is in fact manufactured in West Virginia.  Second

Brummel Decl. ¶ 3; *see also* Klein Decl. Ex. D.  Moreover, even if the location of office

headquarters were determinative under the Policy, Ecolab has principal administrative

offices in several states, including Illinois, North Carolina, Texas, and Pennsylvania, as

well as Minnesota.  Klein Decl. Ex. C at 23.

Chubb is a large and sophisticated insurance company; it defies reason that in

issuing a liability insurance policy to a company like Ecolab—with administrative

offices, manufacturing facilities, and sales all over the world—Chubb simply assumed

that all coverage disputes would be governed by Minnesota law, with no need for a

choice of law clause in the Policy.  What is much more likely is that Chubb chose to omit

the choice of law clause so that it could decide after the fact which state's law would be

most advantageous for any particular dispute.  Neither California nor Minnesota law,

however, allows an insurer to engage in these types of tactics:  under both states' laws,

ambiguities in insurance policies must be resolved in favor of the insured.  *See General

Cas. Co. of Wisconsin v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009);

*Yahoo Inc. v. National Union Fire Ins. Co. et al.*, 14 Cal. 5th 58, 69 (2022).  Accordingly,

should the Court find the Policy ambiguous as to choice of law, the Court should construe

it in Ecolab's favor by applying California law.

6

C.    **The Choice-Influencing Factors Support the Application of California Law.**

Even aside from any ambiguity, when the complete factual context of the Policy is considered in accordance with Minnesota's choice-influencing factors, there is no question that California law should apply to this dispute.

1.    Predictability of Result

As discussed in Ecolab's opening brief, this Court has held that "predictability of result is not advanced by applying the law of the State in which the insurance contract arose," particularly when the insured does business in many states and the insurer was therefore "on notice that its insured was at risk of suit in other states." *Med. Graphics Corp. v. Hartford Fire Ins. Co.*, 171 F.R.D. 254, 261 (D. Minn. 1997) (citing *American States Ins. v. Mankato Iron & Metal*, 848 F. Supp. 1436, 1443 (D. Minn.1993)).

In attempting to argue to the contrary, Chubb relies heavily on an unpublished, and therefore non-precedential,[3] Minnesota decision, *St. Paul Mercury Ins. Co. v. N. States Power Co.*, 2009 WL 2596074 (Minn. Ct. App. Aug. 25, 2009).  In that case, however, the court merely found that the parties "could have fairly anticipated that the insurance contracts might be construed under Minnesota law" based on facts showing that insurance procurement—and claims—were handled by the Minnesota parent company, whereas the environmental cleanup sites at issue were operated by separate

---

[3] *See Vlahos v. R & I Constr.*, 676 N.W.2d 672, 676 n. 3 (Minn. 2004) (holding district court erred "both as a matter of law and as a matter of practice" by relying on an unpublished opinion of the court of appeals and noting that "[t]he danger of miscitation is great because unpublished decisions rarely contain a full recitation of the facts").

Wisconsin subsidiary, not by the Minnesota parent. *Id.* at *3-4. No such facts exist in this case, nor existed in the *Med. Graphics* case, both of which involved situations in which the same company procured insurance in one state but was subjected to foreseeable liabilities in another state, such that both the insurer and the insured knew that the risks existed in a state different from the one in which the insurance contract arose. *St. Paul Mercury*, therefore, does not undermine the thoroughly-reasoned conclusion of the *Med. Graphics* decision that when a company operates across state borders, in the absence of evidence that the parties "bargained . . . for an insurance policy with the mutual expectation that the interpretation of that policy would be governed by" a particular state's law, "the mere fact that the policy was issued in [that state] is not determinative of the parties' expectations." *Med. Graphics*, 171 F.R.D. at 261.

Chubb's reliance on *Cargill* is similarly misplaced. The court in that case gave short shrift to the choice of law analysis and found only that Georgia law should not apply in the absence of any evidence whatsoever that the parties intended that result. *Cargill*, 642 N.W.2d at 89. Even so, the case does not support Chubb's argument here because it did not hold that the place of contracting was dispositive; it found that application of the law of the insurer's home state was also an option. *Id.* at 90. In this case, the insurer is located in Pennsylvania, which employs the same allocation methodology as California. *See J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 39 (1993). Accordingly, Ecolab would not object to the application of the law of the insurer's home state in this case. But more importantly, this case, unlike *Cargill*, involves substantial evidence that the parties contemplated California as the likely

location of the most significant risks to Ecolab's business and therefore would have anticipated the application of California law.  Specifically, as discussed above, Chubb knew that Ecolab manufactured products in California, made a significant portion of its sales in California, and historically experienced liability losses in California amounting to almost one-third of its losses nationwide.

Chubb's additional citations to *Jepson* and *Wohlert* involve an out-of-context quotation that does not contradict any of Ecolab's legal authorities.  Those cases merely say that in the case of automobile insurance, because a car that may wind up in any state, "where an accident occurs is unimportant" compared to other state interests.  *Wohlert v. Hartford Fire Ins. Co.*, 2013 WL 1249214, at *5 (D. Minn. Mar. 27, 2013), *see also Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 471 (Minn. 1994).  That particular finding is unique to the automobile insurance context, and the cases acknowledge that the relevant inquiry "looks at the contacts the state has with the issues being litigated" and determines "whether the choice of law was predictable."  *Wohlert*, 2013 WL 1249214, at *5-6.  As previously discussed, California law is the predictable choice here because California is explicitly named and contemplated as an insured risk location in the Policy and Ecolab is subjected to repeated litigation in California resulting in greater losses than any other place, not simply a single car accident.

### 2.    Maintenance of Interstate Order

This factor assesses the relative contacts or connections each state has with the issues in dispute.  *Med. Graphics*, 171 F.R.D. at 262 (evaluating whether the state whose law is to be applied has "sufficient connection with the facts at issue"); *see also*

*Schmelzle v. ALZA Corp.*, 561 F. Supp. 2d 1046, 1049 (D. Minn. 2008). Because all of the lawsuits for which Ecolab has sought insurance coverage from Chubb were brought and litigated in California, California has far more significant connections with the facts at issue than does Minnesota. Specifically, the nature of the underlying claims that were asserted against Ecolab, the amounts that Ecolab incurred to defend those claims, and the amounts that Ecolab paid to resolve them are all factual matters that arose solely within California. *See Med. Graphics*, 171 F.R.D. at 262 (finding that the facts concerning the underlying litigation, all of which took place in Minnesota, favored the application of Minnesota law under this factor).

Chubb's unwarranted accusation of "forum-shopping" is baseless and therefore irrelevant to the application of this factor. Chubb Opp. at 25. Because the underlying lawsuits for which Chubb improperly refused to provide insurance coverage were all in California, it of course made sense for Ecolab originally to file suit in California. Ecolab's desire to "preserve jurisdiction" in California was based solely on Ecolab's suspicion—which turned out to be correct—that Chubb would itself forum-shop in an attempt to avoid the application of California law to this dispute.

Indeed, months after Ecolab filed suit in California, Chubb filed a follow-on action in Minnesota, designed entirely to construct an incorrect narrative that there were underlying Minnesota cases and facts involved. Because Chubb was undoubtedly aware that the location of Ecolab's headquarters alone would not be sufficient to result in the application of Minnesota law, Chubb's initial complaint (since dismissed) attempted to conjure additional contacts between this action and Minnesota by referencing underlying

10

Minnesota actions as to which there was no case or controversy because Ecolab had never sought insurance coverage for those actions, and in fact, most of them had already been dismissed with no payment. Klein Decl. Ex. G. ¶ 7. It is exactly the type of forum-shopping that Chubb has engaged in here that is disfavored by the Minnesota courts. In deciding to sell liability insurance to Ecolab, Chubb has been able to charge higher premiums based on the significant losses that Ecolab experiences in California compared to other locations; Chubb should not be able to avoid the consequences of that decision now that it faces a coverage dispute with its customer. *See, e.g.*, *Jepson*, 513 N.W.2d at 471 ("People who purposefully seek advantages offered by another state ought not be allowed to avoid the burdens associated with their choice.").

Finally, Chubb tries to distinguish this case from the *Perry* and *Brennan* cases relied upon by Ecolab on the ground that the issues in this case are "purely contractual." Chubb Opp. at 25-26. Both *Perry* and *Brennan*, however, stand for the proposition that "[t]he primary focus is on the contacts that each competing state has with the dispute." *Perry, Trustee for Sherell v. Beltrani Cnty.*, 520 F. Supp. 3d 1115, 1123 (D. Minn. 2021); *Brennan v. Cass Cnty. Health*, 2023 WL 121943, at *9 D. Minn. Jan. 6, 2023). Chubb is wrong that all of the contacts or issues in this case are "purely contractual." A dispute over liability insurance coverage involves a contract that provides for payment of tort liabilities, and many of the issues in liability insurance cases—indeed, frequently, *most* of the issues—involve the facts surrounding the underlying tort action. That this is true in this case can be seen from the parties' briefing on this motion alone: both parties spend substantial portions of their briefing discussing the facts surrounding the underlying

11

*Slamer* tort action, all of which facts occurred in California. *See infra* at Section II.

Because the underlying tort cases relevant to this dispute involve California-based facts,

it is California that has the most significant contacts with the parties' dispute. *See also*

*Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 96 (Minn. 2000)

(contract action in which both the court of appeals and Minnesota Supreme Court found

that North Dakota's interest in the action derived from the fact that the accident occurred

there)[4]; *Hime v. State Farm Fire & Cas. Co.*, 284 N.W.2d 829, 832-34 (Minn. 1979)

(contract action selecting the law of the state where the car accident happened over the

state where the insurance policy was issued and maintained).

  3.  <u>Simplification of Judicial Task</u>

Chubb does not and cannot dispute that Minnesota courts routinely determine

themselves capable of interpreting and applying other states' laws. Ecolab Mot. at 19;

Chubb Opp. at 22. And again, Chubb's argument that this Court "could be faced with

multiple separate actions seeking to apply different laws," Chubb Opp. at 22, is fiction,

given that Ecolab has only sought coverage for the underlying California cases. Chubb's

only other argument in connection with this factor involves a citation to *Gimmestad v.*

*Gimmestad*, 451 N.W.2d 662 (Minn. Ct. App. 1990) for the proposition that this factor is

"advanced when a Minnesota court applies Minnesota law." *Id.* at 666. This is

---

[4] Chubb claims the Court should disregard *Nodak* because it is a "statutory subrogation" case (Chubb Opp. at 27-28), but the *Nodak* court's comments on that point were only in connection with the "predictability of result" factor. 604 N.W.2d at 94-95. With respect to the maintenance of interstate order, the court engaged in the same comparison of the location of injury to the location of contracting that the parties do here. *Id.* at 95.

significantly less true for Minnesota federal courts than for Minnesota state courts, however, as the federal courts are routinely called upon to apply the laws of other jurisdictions. *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001) (finding this factor irrelevant, since a "federal district court is faced almost daily with the task of applying some state's law other than that of the forum state, and it is equally capable of resolving the dispute under [either law]"). This factor therefore does not weigh against the application of California law.

4.    <u>Advancement of Forum Government's Interest</u>

In addition to reiterating the points that have already been addressed above in connection with this factor, Chubb argues—with no supporting authority—that "Ecolab cannot be said to have been injured in California or any state other than Minnesota." Chubb Opp. at 23. This is again not true. Ecolab paid money to California plaintiffs in connection with—and paid to defend against—lawsuits that were brought and litigated in California, and Chubb has improperly refused to pay those losses. Ecolab's losses therefore occurred in California, and California has extensive case law protecting the interests of policyholders who do business within its borders.

The fact that Minnesota and California have different allocation rules likewise does not mean that Minnesota law should be favored because Minnesota courts recognize that they may "refuse[] to apply our law when the law of another state would better serve to compensate" the injured party. *See Jepson*, 513 N.W.2d at 472. Chubb's assertion that California's vertical exhaustion rule "would harm Minnesota's governmental interests" lacks any support, and as is discussed in detail in Section II, *infra*, Minnesota

13

law favors a rule that results in vertical exhaustion whenever possible, based on the

identification of a "discrete and identifiable event."  The animating principle across both

California and Minnesota law is the governmental interest in making whole those who

suffer damages, not in depriving them of contractually owed benefits.

            5.      Better Rule of Law

The parties agree that courts typically consider this factor neutral and only assess

it if the other factors do not resolve the inquiry.  Ecolab Mot. at 22; Chubb Opp. at 24;

*see also Med. Graphics*, 171 F.R.D. at 263; *see also Pitman Farms v. Kuehl Poultry LLC*,

676 F. Supp. 3d 741, 757 (D. Minn. 2023) (finding this factor "does not apply at all when

a court can resolve a choice-of-law question using the other four factors").

**II.**    **Were Minnesota Law to Apply, the Injuries Alleged in the *Slamer* Lawsuit Can and Therefore Should be Ascribed to a Discrete and Identifiable Event Under the Controlling Authority.**

As discussed in detail above, the Court should apply California law to this dispute,

and in that event, the parties' dispute over the proper application of Minnesota law would

be moot.  Should the Court reach the Minnesota law issue, however, the parties agree on

the relevant legal principles and authorities.  Chubb does not and cannot contest that if

the injuries alleged in the *Slamer* lawsuit arose from a discrete and identifiable event

analogous to that present in *In Re Silicone Implant*, only the retained limit for a single

policy period would apply to the *Slamer* losses.  667 N.W.2d at 421. Nor can it contradict

the Minnesota Supreme Court's long-standing mantra that allocation schemes like the

one Chubb is proposing here are "meant to be the exception and not the rule."  *Id.* at 421;

*Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724 (Minn.1997).

The sole dispute between the parties regarding the application of Minnesota law is therefore whether the OxyCide allegations in *Slamer* are more analogous to the continuous exposure to silicone from leaking breast implants that was at issue in *In Re Silicone Implant* (Ecolab's position) or to continuous undifferentiated environmental contamination (Chubb's position). The *Slamer* case presents the same situation as the breast implant cases, and is distinguishable from the undifferentiated environmental contamination cases, for several reasons.

First, Chubb is incorrect that *In Re Silicone Implant* is distinguishable on the basis that the breast implant "injury was unavoidable" from the date of implant. Chubb Opp. at 29. The allegations and evidence in the *Slamer* case—which, for the purposes of this coverage litigation only, this Court must accept as true —showed that Ms. Slamer's first exposure to OxyCide caused immediate symptoms, and that she was permanently injured as a result. Haskett Decl. Ex. 8 (Feb. 6, 2023 Trial Transcript) at 91:5–7, 91:8–11; Ex. 9 (Feb. 22, 2023 Trial Transcript) at 29:1–3, 30:1–4; *see In Re Silicone Implant*, 667 N.W.2d at 416. Accordingly, from the date of Ms. Slamer's first exposure to OxyCide, Ms. Slamer alleged that her injuries were just as unavoidable as the injuries from the breast implants. Haskett Decl. Ex. 6 ¶¶ 5, 11 (alleging a variety of acute reactions and hospitalization "immediately" upon first exposure).

Indeed, the presence of an injury-causing "discrete and identifiable event" in the *Slamer* case is even clearer than in *In Re Silicone Implant*. In the case of the breast implants, there was no evidence that there was injury on the date of implant, and in fact, it is likely that the implants did not begin their gradual, injury-causing leakage until some

15

later date.  Despite the absence of any injury on the date of implant, however, the Minnesota Supreme Court still determined that all of the subsequent injuries arose from the discrete and identifiable event of the implant.  Here, the "discrete and identifiable event" is much clearer because Ms. Slamer alleged, not simply that later injuries traced back to her first exposure, as with the breast implants, but that the first exposure itself caused injury.  Chubb cannot rely on the fact that Ms. Slamer alleged injuries that continued over time—which was also the case with the breast implants—to avoid the fact that it is easy to identify the "discrete and identifiable event" that commenced the alleged injury.

Chubb also attempts to distinguish *In Re Silicone Implant* on the basis that "the harmful silicone was surgically implanted all at once," which, Chubb argues, is different from a hypothetical situation in which a person was "injected daily with silicone." Chubb Opp. at 29.  It is of course not different.  Although the silicone breast implant was inserted on one date, it was not the implant but the gradual leakage of silicone over time into the plaintiffs' bodies that caused their injuries, which is no different from Ms. Slamer's exposure to OxyCide over time.  The Minnesota Supreme Court traced all of the continuing injuries from the gradual leakage of silicone back to an event that did not itself even cause any injury—the implant—because, it stressed, "[i]f we can identify a discrete originating event that allows us to avoid allocation, we should do so." 667 N.W.2d at 421-22.  Here, the Court can trace Ms. Slamer's alleged injuries back to an event that *did* purportedly cause injury:  the "discrete and identifiable event" is Ms. Slamer's first exposure to OxyCide on February 15, 2016.  Haskett Decl. Ex. 6 ¶ 11.  The

16

Court therefore can and should avoid allocating injuries across policy periods based on some alternative theory.

Neither of the two pollution cases on which Chubb relies justifies concluding that the *Slamer* lawsuit is "one of the 'difficult cases' in which allocation is appropriate." 667 N.W.2d at 422. The first involved a massive environmental cleanup of coal tar and oxide waste in 1981 that resulted from a combination of a 1910 decision to change the processing method from a water to coal, the 1916 inception of the insured company, the 1924 purchase and 1928 construction of new coal-gas facilities, and the operation of the facilities over many subsequent decades involving a large variety of insurers. *Northern States Power Co. v. Fidelity and Cas. Co. of New York*, 523 N.W.2d 657, 659 (Minn. 1994) ("*NSP*"). The second similarly involved a massive cleanup effort following discovery of pollutants from a tar refining plant that resulted from some indistinguishable combination of the plant's operations at intervals between 1924 and 1948, a series of spills, and leakage from dismantling defunct storage tanks in 1955, with "agreement [among experts] that the contamination could not be apportioned among causes." *Domtar*, 563 N.W.2d at 728-30. Given the factual complexity, no court assessing these insurance claims was able to trace the damage back to a discrete and identifiable event, or a particular starting point. *See*, *e.g.*, *Domtar, Inc. v. Niagara Fire Ins. Co.*, 552 N.W.2d 738, 745 (Minn. Ct. App. 1996) (acknowledging "there was no way to tell what damage was the result of what events"). The Minnesota Supreme Court was therefore left with the difficult task of being forced to allocate across policy periods. *NSP*, 523 N.W.2d at 6649; *Domtar*, 563 N.W.2d at 733-34.

17

By contrast, the court in *In Re Silicone Implant* considered and rejected employing the *NSP* framework, as well as the reasoning of *Domtar*. *In Re Silicone Implant*, 667 N.W.2d at 422. Instead, it used the framework set out by an environmental contamination case with very different facts, which Chubb ignores entirely, in which the court could and therefore did trace the repeated and continuous exposure to harmful substances back to one initiating event. *Id.* at 420-21; *SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305 (Minn. 1995), *overruled on other grounds by in Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 917 (Minn. 2009). Similarly, the injuries in *Slamer* can be traced back to a defined starting point: Ms. Slamer's first exposure to OxyCide, which provides the "discrete and identifiable" event that the Court needs in order to avoid the allocation method disfavored by the Minnesota Supreme Court.

Chubb's asbestos case citation is similarly inapposite. In that case, the court found that the district court did not abuse its discretion in concluding the injuries at issue were caused by inhalation of fibers over time, which "could not be divided into discrete events" and did not have any particular starting point that any of the parties or the district court could identify. *St. Paul Fire and Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 410 (Minn. Ct. App. 2007). Finding no practical way to identify initiating events for the injuries at issue, the court had no choice but to allocate across policy periods. As with *NSP* and *Domtar*, and unlike *SCSC*, *In Re Silicone Implant*, and *Slamer*, there was simply no discrete and identifiable event for the Court to choose. Chubb's statement that Minnesota law allocates across policy periods whenever a toxic exposure claim arises,

18

Chubb Opp. at 30, ignores this factual context and disregards the Minnesota Supreme

Court's edict that such allocation is the exception, not the rule.

## **CONCLUSION**

Based on the foregoing, Ecolab respectfully requests that the Court enter an order

finding that California law applies to the coverage dispute in this case.  In the alternative,

if the Court finds that Minnesota law applies, Ecolab requests that the Court find that the

alleged injuries in the *Slamer* lawsuit arose from a discrete and identifiable event.

DATED:  December 10, 2024

Respectfully submitted,

By:    */s/ Aaron M. Johnson*

John B. Lunseth II (#065341)
Aaron M. Johnson (#034641X)
**TAFT STETTINIUS & HOLLISTER P.A.**
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone:  612-977-8400
Fax:  612-977-8650
jlunseth@taftlaw.com;
ajohnson@taftlaw.com

Christine S. Haskett (*pro hac vice*)
Breanna K. Jones (*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
chaskett@cov.com; bjones@cov.com

Heather W. Habes (*pro hac vice*)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars, Suite 3500

Los Angeles, California 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
hhabes@cov.com

**Attorneys for Plaintiff ECOLAB INC.**