**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| ECOLAB, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ACE PROPERTY AND CASUALTY ) <br> INSURANCE COMPANY., ) <br> ) <br> Defendant. ) | Case No. 0:23-cv-1259-ECT-ECW <br><br> **Hon. Eric C. Tostrud** <br><br> **Mag. Judge Elizabeth Cowan Wright** |

_____

# ACE PROPERTY AND CASUALTY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUR-REPLY TO ECOLAB, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................... iii

ARGUMENT ............................................................................................................. 1

   I. Application of California Law is Unconstitutional ..................................................... 1

   II. None of Ecolab's Claimed Contacts with California are Relevant and the Court Must Only Consider the Contacts Relating to the Contractual Dispute ......................... 3

   III. The Choice-Influencing Factors Support Application of Minnesota Law ................ 4

      a.   Predictability of Results ................................................................................ 4

      b.   Maintenance of Interstate and International Order ............................................. 6

      c.   Simplification of Judicial Task ..................................................................... 8

      d.   Advancement of the Forum's Governmental Interest .......................................... 8

      e.   Better Rule of Law ...................................................................................... 9

   IV. Slamer's Injuries Are So Continuous and Intermingled As To Be Practically Indivisible and Do Not Arise Out of a Discrete and Identifiable Event ......................... 9

CONCLUSION ........................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Allstate Ins. Co. v. Hague*,
   449 U.S. 302, 308 (1981)..................................................................................................2

*Cargill, Inc. v. Evanston Ins. Co.* ........................................................................................4

*Cargill, Inc. v. Evanston Ins. Co.*,
   642 N.W.2d 80, 89-90 (Minn. Ct. App. 2002)................................................................3

*Domtar*,
   563 N.W.2d 724, 733 (Minn. 1997) ................................................................................9

*Domtar, Inc. v. Niagara Fire Ins. Co.* ("Domtar")...............................................................9

*Jepson v. Gen. Cas. Co. of Wisconsin* .................................................................................9

*Jepson v. Gen. Cas. Co. of Wisconsin* and *Wohlert v. Hartford Fire Ins. Co.*,
   513 N.W.2d 467, 470 (Minn. 1994); 2013 WL 1249214, at *5 (D. Minn. Mar. 27, 2013) .....................5

*Jepson*,
   513 N.W.2d at 472...........................................................................................................9

*Martin v. Ecolab, Inc., Superior Court*, County of San Bernardino,
   Case No. CIVSB2116695 ...............................................................................................3

*Med. Graphics Corp. v. Hartford Fire Ins. Co.*,
   171 F.R.D. 254, 256 (D. Minn. 1997) ............................................................................5

*Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.* .....................................................7

*Northern States Power Co. v. Fidelity and Cas. Co. of New York* ("NSP")...............................9

*Schmelzle v. ALZA Corp.*,
   561 F. Supp. 2d 1046, 1049 (D. Minn. 2008) .................................................................6

*SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 310 (Sup. Ct. Minn. 1995) ................10

*See Cargill, Inc. v. Evanston Ins. Co.*,
   642 N.W.2d 80, 89 (Ct. App. Minn. 2002) .....................................................................8

*See Med. Graphics Corp. v. Hartford Fire Ins. Co.*,
   171 F.R.D. 254, 262 (D. Minn. 1997) ............................................................................6

*St. Paul Mercury Ins. v. Northern States Power Co.,*
   2009 WL 2596074, at *6 (Ct. App. Minn. Aug. 25, 2009)..............................................4

ACE Property and Casualty Insurance Company ("ACE") submits this Memorandum of Law in sur-reply to Plaintiff Ecolab, Inc.'s ("Ecolab") Motion for Partial Summary Judgment.

## ARGUMENT

### I. Application of California Law is Unconstitutional

Ecolab's contention that it never sought coverage for non-California actions is disingenuous. First, even though Ecolab, through its broker Marsh, reported 85 lawsuits to ACE, it never advised that it was not seeking coverage for them. (¶¶4, 32 of the Declaration of Lawrence Klein dated November 8, 2024 ("Klein Decl.")). Ecolab's argument that providing notice does not amount to seeking coverage is silly for the simple reason that it is self-evident that the sole purpose of an insured, here Ecolab, reporting lawsuits to its insurer, here ACE, is to seek coverage under the applicable policies. It is also for this reason that Ecolab continued to provide ACE with reporting from defense counsel as to the status of the underlying litigation. (¶3 of the Declaration of Lawrence Klein dated January 23, 2025 (the "Second Klein Decl.")).

Second, ACE issued letters dated September 21, 2020 and July 10, 2023 to Ecolab stating its coverage position as to all of the Lawsuits. (Second Klein Decl., Exhibits A and B). While it is true that Ecolab commenced an action in California seeking a limited declaratory judgment, ACE commenced an action in this Court seeking declaratory relief as to all of the Lawsuits. (Second Klein Decl., Exhibit C). It is irrelevant that ACE's action was administratively dismissed—as the Court is aware, the parties merely agreed to dismiss

the ACE action in order to facilitate consolidation of the two cases and streamline the dispute with the understanding that preliminary, potentially dispositive issues would be addressed by this motion. As such, despite Ecolab's self-serving claim that it only seeks coverage for actions filed in California, ACE is entitled to declaratory relief as to all Lawsuits which Ecolab put into controversy when it tendered the Lawsuits to ACE, as pled in its Counterclaim.

Third, as acknowledged by Ecolab's trial counsel in the Lawsuits, numerous lawsuits (at least 51) were dismissed without prejudice and may be recommenced. (ECF Doc. No. 130, ¶4). Ecolab has not furnished any reason why these cases could not be recommenced nor has it represented that it would not seek coverage if they were. ACE is entitled to adjudication of the issues raised in this motion sequence as to all Lawsuits.

Turning to whether Minnesota or California law should apply, due process requires the application of the law of a State that has a significant contact or significant aggregation of contacts, creating state interests, *with the parties and the occurrence or transaction giving rise to the litigation*, such that choice of its law is neither arbitrary nor fundamentally unfair. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981). The only relevant contacts are those pertaining to the insurance contract dispute and none of those contacts involve California. As such, California law has no significant contact with the parties and occurrence or transaction giving rise to the litigation. Simply put, application of California law to a policy negotiated and issued in Minnesota would violate due process.

## II. None of Ecolab's Claimed Contacts with California are Relevant and the Court Must Only Consider the Contacts Relating to the Contractual Dispute

Ecolab continues to misconstrue the applicable law, which is simply that "the only states involved in the choice-of-law analysis [are] the home states of the parties to the contract." *Cargill, Inc. v. Evanston Ins. Co.*, 642 N.W.2d 80, 89-90 (Minn. Ct. App. 2002). As such, Ecolab's unsupported arguments that the parties contemplated California law would apply because of various unrelated activities in California is meritless. It is irrelevant that prior lawsuits were filed against Ecolab in California (which Ecolab claims were listed in its loss histories) or that Ecolab has manufacturing facilities in California. None of these activities relate to formation and issuance of the insurance contracts in dispute. Indeed, Mr. Brummel's Second Declaration does not deny that he oversaw the procurement and renewal of insurance policies for Ecolab from its headquarters in Minnesota.

For the same reasons, it is irrelevant that a small fraction of the Lawsuits were filed in California. The location of an underlying lawsuit is irrelevant to a dispute regarding interpretation of an insurance contract. For the first time in reply, Ecolab claims this is the single most important factor in the choice-of-law analysis when its initial papers contend that the location of the injury is dispositive. (ECF Doc. No. 118, p15-16).[1]

Ecolab's arguments for construing ambiguities in favor of the insured are not only improper as they are asserted for the first time in reply (*See* L.R. 7.1 (c)(3)), but meritless as there is no ambiguity since the policies do not contain a choice-of-law provision.

---

[1] Ecolab ignores that one of the California actions, *Martin v. Ecolab, Inc., Superior Court*, County of San Bernardino, Case No. CIVSB2116695, was filed by an Oregon resident injured in Oregon.

3

**III. The Choice-Influencing Factors Support Application of Minnesota Law**

    a.    <u>Predictability of Results</u>

All of Ecolab's arguments pertaining to the parties' purported expectations that California law would apply because Ecolab manufactured products in California, had sales in California, and experienced losses in California fail for the same reasons that its argument that the location of the underlying injury dictates the applicable law fails—these facts simply have no bearing on the contractual dispute and it would strain credulity to believe the parties intended the law of any state where an incident occurred, product was sold, or had prior losses, would govern an insurance contract, when Ecolab is a multi-national corporation and its products are distributed worldwide.

Ecolab cannot distinguish *St. Paul Mercury Ins. v. Northern States Power Co.* on its facts because it is directly on point. 2009 WL 2596074, at *6 (Ct. App. Minn. Aug. 25, 2009). In *St. Paul*, the court was also faced with whether Minnesota or Wisconsin law applied in a dispute about the allocation of damages across policy years. *Id.* at *1. In finding Minnesota law applied, the court reasoned that the policies at issue were acquired and negotiated by the Minnesota parent company and therefore, it was predictable that such policies would be interpreted under Minnesota law despite coverage of the Wisconsin subsidiary's activities in Wisconsin. *Id.* at *3-4. The district court also found it "strain[ed] credulity" to conclude that the law of the place where the underlying property was located would control insurance coverage. *Id.* at *6.

Similarly, Ecolab cannot distinguish *Cargill, Inc. v. Evanston Ins. Co.*, another case in which a court determined that it would strain credulity to believe the law of the place of

4

injury would apply to an insurance contract where the policy insured properties located in various states. 642 N.W.2d 80, 89 (Ct. App. Minn. 2002). *Cargill* is binding precedent and directly applicable to the facts at bar. Ecolab misstates the holding of *Cargill* by contending the court declined to apply Georgia law (the place of the underlying injury) based on lack of evidence of the parties' intent. Rather, the court was clear that Georgia law should not be considered in the first place because it was not one of the home states of the parties, *i.e.*, had no relation to the relevant contacts to the insurance contract dispute. *Id.* at 89-90.

Ecolab's reliance on *Med. Graphics Corp. v. Hartford Fire Ins. Co.* remains misplaced. 171 F.R.D. 254, 256 (D. Minn. 1997). *Med. Graphics* holds no precedential value as a district court decision. It is also entirely distinguishable on its facts as it dealt with whether an underlying settlement agreement was enforceable and here, the parties are only faced with a contractual issue divorced from any of the underlying actions which Ecolab posits have all been resolved. *Id.* at 258-259.

Ecolab also mischaracterizes the holdings of the court in *Jepson v. Gen. Cas. Co. of Wisconsin* and *Wohlert v. Hartford Fire Ins. Co.*, which found that the place of the accident is unimportant in a dispute regarding insurance coverage. 513 N.W.2d 467, 470 (Minn. 1994); 2013 WL 1249214, at *5 (D. Minn. Mar. 27, 2013). The courts' holdings are not limited by the respective underlying facts involving auto accidents. Rather, as the *Wohlert* court clarifies, the choice-of-law inquiry depends on what was predictable ***before the time of the event*** giving rise to the cause of action. 2013 WL 1249214, at *5. Notably, the court found the location of the underlying accident could not have been predictable and therefore, is unimportant. *Id.* at *5. *See also, Jepson*, at 471. Similarly, the location of any of the

5

underlying plaintiffs' accidents or later lawsuits could not have been predictable at the time of contracting and is therefore unimportant to the choice-of-law inquiry.

      b.      <u>Maintenance of Interstate and International Order</u>

Ecolab lamely claims the nature of the underlying claims, amounts incurred to defend such claims, and amounts paid to resolve the claims are all facts which point to California having a more significant connection with the issues in dispute than Minnesota. However, this factor in the choice-of-law analysis "weighs in favor of the state that has the most significant contacts with the facts relevant to the litigation" and none of these facts or any others relating to the underlying actions have anything to do with the contractual issue in dispute. *Schmelzle v. ALZA Corp.*, 561 F. Supp. 2d 1046, 1049 (D. Minn. 2008).

Ecolab must also be held accountable for its forum shopping, which manifests the disrespect for Minnesota that this factor finds impermissible. *See Med. Graphics Corp. v. Hartford Fire Ins. Co.*, 171 F.R.D. 254, 262 (D. Minn. 1997). Despite admitting that it filed the action in California to "preserve jurisdiction", Ecolab attempts to manufacture a narrative in which the underlying actions justify filing in a jurisdiction in which none of the parties reside and which has nothing to do with the negotiation and formation of the insurance contracts in dispute. Further, at the time Ecolab commenced its action, 38 of the Lawsuits remained unresolved and therefore, Ecolab's argument that it only sought coverage for California lawsuits is simply not credible. (Klein Decl., ¶8).

Ecolab argues that ACE also engaged in forum-shopping by filing its action in Minnesota. Ecolab's argument is undermined by the fact that its first-filed action was

6

transferred to this Court when the Central District of California granted ACE's motion to transfer venue, recognizing California to be an improper venue (Klein Decl., Exhibit F).

In an attempt to side-step the true nature of this dispute, Ecolab argues that it is not purely contractual because arguments have been made with respect to the Slamer Action. However, the choice-of-law question is divorced from the facts and arguments relating to that Action. Rather, pursuant to agreement, the choice-of-law inquiry is the initial subject of this motion because both parties felt that it likely would be dispositive. It is only if it is not that the parties agreed to move onto the second issue, and dispute how Minnesota law applies to the facts of the Slamer Action. Notably, the parties did not agree to brief and for the Court to determine coverage if California law is held to apply. That is because, under Minnesota law, the facts relating to a tort action occurring ***after the formation of the insurance contracts*** are irrelevant to a dispute about interpretation of such contracts and unrelated to the intentions and expectations of the parties at the time of contracting.

Further, Ecolab's arguments as to *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.* remain irrelevant as the consideration of the location of the injury with respect to this factor in that case was premised on the fact that the dispute involved whether North Dakota or Minnesota's no-fault statutes applied to permit subrogation for monies paid by one carrier relating to an auto accident, where the Minnesota insurer sought to subrogate against the North Dakota insurer. 604 N.W.2d 91, 92 (Sup. Ct. Minn. 2000). *Nodak* is entirely inapplicable because it does not involve a contractual dispute. *Id.* at 94-95.

### c. Simplification of Judicial Task

Ecolab argues that the Court would not be faced with multiple actions seeking to apply different laws if the location of the underlying injury or underlying litigation is considered determinative in this choice-of-law dispute. Ecolab, however, ignores that 51 of the 70 Minnesota Lawsuits were dismissed without prejudice and, as Mr. Morgan acknowledges, it is unknown whether any will be revived. (Klein Decl., Exhibit J; ECF Doc. No. 130, ¶4). As demonstrated above, Ecolab sought coverage for all of the Lawsuits, and has not withdrawn its tender of those dismissed without prejudice. (Klein Decl., ¶¶4, 32).

### d. Advancement of the Forum's Governmental Interest

Ecolab's contentions on this factor are contrary to well established law that the state where the injury occurs has minimal interest in determining who should pay for the injury. *See Cargill, Inc. v. Evanston Ins. Co.*, 642 N.W.2d 80, 89 (Ct. App. Minn. 2002). All of the California Lawsuits have been settled or dismissed and the parties ultimately dispute who should pay for such damages. Minnesota's governmental interest to ensure those who contract within its borders receive the benefit of those contracts cannot be outweighed.

That Ecolab paid some amounts to settle or defend a small portion of the actions, is beside the point. As inconvenient as Ecolab might find it, ACE paid an amount in retained limits to settle the Slamer Action for which it seeks reimbursement from Ecolab, far exceeding any payment by Ecolab. (Second Klein Decl. ¶7). Ecolab cites to no authority which finds California would have any interest in compensating a policyholder for a

8

contract not formed or negotiated within its borders. Further, its reliance on *Jepson v. Gen. Cas. Co. of Wisconsin* for the proposition that a Minnesota court may apply the law of another state if it would better serve to compensate, is taken completely out of context as the court in *Jepson* was only stating an interest in compensating ***tort victims***, which Ecolab is not. *Jepson*, 513 N.W.2d at 472.

      e.      <u>Better Rule of Law</u>

Contrary to Ecolab's contention, this factor also favors application of Minnesota law based on the arguments set forth in ACE's opposition, which Ecolab does not dispute.

**IV. Slamer's Injuries Are So Continuous and Intermingled As To Be Practically Indivisible and Do Not Arise Out of a Discrete and Identifiable Event**

Ecolab continues to misstate the applicable law. The seminal cases of *Northern States Power Co. v. Fidelity and Cas. Co. of New York* ("NSP"), and *Domtar, Inc. v. Niagara Fire Ins. Co.* ("Domtar") provide that allocation of damages is appropriate where injury is "both continuous and so intermingled as to be practically indivisible". (quoting from *Domtar*, 563 N.W.2d 724, 733 (Minn. 1997); *see also* 523 N.W.2d 657, 659, 664 (Minn. 1994). It is irrelevant that *NSP* and *Domtar* are environmental cases. *NSP* and *Domtar* are directly on point and the instant facts are closely analogous, dictating allocation across policy periods where injury is continuous, intermingled, and indivisible. *Domtar*, 563 N.W.2d 724, 733 (Minn. 1997).

Further, *In re Silicone Implant* is inapplicable for one simple reason—the court required "a readily identifiable discrete event from which ***all*** of the plaintiffs' alleged

9

injuries arose" to avoid allocation. 667 N.W.2d 405, 422 (Sup. Ct. Minn. 2003). Ecolab's reliance on *SCSC Corp. v. Allied Mut. Ins. Co.* is similarly misplaced as the court in that case found all of the contamination arose from a single environmental spill. 536 N.W.2d 305, 310 (Sup. Ct. Minn. 1995).

Here, unlike *In re Silicone* and *SCSC Corp.*, there is no single or identifiable event from which ***all*** of Ms. Slamer's injuries arose. Instead, Ms. Slamer was injured each time she was exposed, with each exposure causing nerve damage, and all resulting injury cannot be attributable to her first exposure. (*See* Klein Decl., Exhibit Q, at 95:18-96:16). Neither Ms. Slamer nor her experts attribute her injuries to her first exposure. (*See* Klein Decl., Exhibit Q, at 95:18-96:16). Ecolab's contention that Ms. Slamer's "later injuries traced back to her ***first*** exposure" is false and unsupported by the record. (ECF Doc. No. 129, p20). Indeed, Ecolab does not and cannot cite to any testimony supporting this contention because there is none.

Ecolab contradicts itself when it contends that Ms. Slamer's injuries were as unavoidable as those arising from the implants in *In re Silicone*. As Ecolab acknowledged in its September 14, 2023 letter, Ms. Slamer's injuries arose from repeated exposure to OxyCide. The repeated exposure created new injury each time and, because later injury was not tied to the first instance of exposure, it was most certainly avoidable and dependent on her daily work circumstances. In contrast, the plaintiffs in *In re. Silicone* faced a leaking implant that only ceased to injure the plaintiff if the implant was finally removed.

Ecolab also misstates the rationale in *St. Paul Fire and Marine Ins. Co. v. A.P.I., Inc.*—the court there did not seek to identify any "particular starting point" or "initiating

10

events" as Ecolab posits. 738 N.W.2d 401, 409-410 (Ct. App. Minn. 2007); (ECF Doc. No. 129, p22). Instead, the court considered whether the continuous exposure and injury could be divided into discrete events, and acknowledged that, while each event was theoretically individual, they were not practically individual events. *Id.* at 410. *A.P.I.* is precedential case law and directly applicable to the facts at bar.

## **CONCLUSION**

For the foregoing reasons, Defendant-Counterclaimant ACE respectfully requests the Court deny Ecolab's Motion for Partial Summary Judgment in its entirety and issue an Order finding Minnesota law governs the ACE Policies and the Parties' coverage dispute and, under Minnesota law, Ecolab must satisfy the retained limits of both the 2014-15 and 2015-16 ACE Policies as Ms. Slamer's injuries do not arise from a discrete and identifiable event and allocation across policy years is required.

Dated:   January 24, 2025                             Respectfully submitted,

                                                     DAC Beachcroft LLP

                                                     By:   /s/ Lawrence Klein

                                                     Lawrence Klein (pro hac vice)
                                                     55 Broadway, Suite 1602
                                                     Telephone: 917-268-3990
                                                     lklein@dacbeachcroft.com

11

HINSHAW & CULBERTSON LLP

Joel T. Wiegert, Reg. No. 306149
250 Nicollet Mall, Suite 1150
Minneapolis, MN  55401
Telephone:  612-333-3434
Fax:  612-334-8888
jwiegert@hinshawlaw.com


*Attorneys for Defendant-Counterclaimant*
*ACE Property and Casualty Insurance Company*